UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| RAYMOND MERCURIO | ) | CASE NO.:  3:05CV7080 |
| | ) | |
| Petitioner/Claimant | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | RESPONDENT CITIBANK |
| | ) | (SOUTH DAKOTA), N.A.'S |
| CITIBANK (SOUTH DAKOTA), N.A. | ) | MOTION TO DISMISS UNDER |
| | ) | RULE 12(B)(6) |
| Respondent | ) | |

Respondent Citibank (South Dakota), N.A ("Citibank") moves this Court for an Order, pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissing the Petition to Confirm Arbitration Award ("Petition) filed by Petitioner Raymond Mercurio ("Petitioner").

By the Petition, Petitioner seeks confirmation of a fraudulent, sham "Arbitration Award" purportedly issued by Solomon Arbitration Group, Inc. ("SAG") against Citibank and in Petitioner's favor.  This Motion is made on the grounds that the Petition fails to state a claim upon which relief can be granted for the following reasons: (i) the sham "Arbitration Award" is neither binding nor enforceable against Citibank because there exists no agreement between the parties to arbitrate before SAG, (ii) Citibank has never agreed to arbitrate any cardholder disputes before SAG, including the instant dispute, as Citibank so advised SAG long before the purported "Arbitration Award" was entered and the Petition was filed, and (iii) the sham "Arbitration Award" was procured by the corruption and fraud of both Petitioner and SAG.  In the alternative,

Citibank requests, pursuant to the Federal Arbitration Act, 9 U.S.C. § 10 ("FAA") that the Court vacate the sham "award" in its entirety.

In short, the Petition is a frivolous and baseless action filed by Petitioner for the purpose of avoiding Petitioner's legitimate credit card debt, harassing Citibank and misleading the Court in a blatant abuse of the judicial system.  In fact, Petitioner has filed two other similar frivolous and baseless petitions against Citibank with respect to two other credit card accounts.  Those petitions also are pending in this Court and are entitled *Raymond Mercurio v. Citibank (South Dakota), N.A.*, Case No. 3:05-CV-7076, and *Raymond Mercurio v. Citibank (South Dakota), N.A.*, Case No. 3:05-CV-7085, respectively.

The Motion is based upon this Motion, the attached Memorandum in Support and Affidavit of Elizabeth S. Barnette, the pleadings and records on file herein, such further papers as may be filed in connection with the Motion and such further argument as may be presented in connection with the hearing on the Motion.

/s/ Thomas L. Rosenberg

Thomas L. Rosenberg  (0024898)
Ulmer & Berne LLP
88 East Broad Street, Suite 1600
Columbus, Ohio  43215
(614) 229-0000
Fax (614) 229-0001
trosenberg@ulmer.com
Attorney for Respondent
Citibank (South Dakota), N.A.

OF COUNSEL:

Marcos Sasso
Stroock & Stroock & Lavan LLP
2029 Century Park East, Suite 1800
Los Angeles, CA  90067-5883
(310) 556-5883
Fax (310) 556-5959
msasso@stroock.com

**MEMORANDUM IN SUPPORT**

**OF MOTION**

## I.  INTRODUCTION

Petitioner Raymond Mercurio ("Petitioner") has submitted to this Court –
and asked for its confirmation of – a fraudulent, sham "Arbitration Award" purportedly
issued by Solomon Arbitration Group, Inc. ("SAG") in favor of Petitioner and against
respondent Citibank (South Dakota), N.A. ("Citibank").  SAG is not an arbitration forum
either agreed to by the parties or consented to by Citibank as a forum to arbitrate any
disputes between Citibank and Petitioner.  Tellingly, Petitioner has failed to present a
copy of any agreement between Petitioner and Citibank to arbitrate any disputes before
SAG.  Indeed, no such agreement exists.  Petitioner cannot present such an agreement
because no such agreement exists.  Therefore, the sham "Arbitration Award" filed with
this Court is a nullity and is not binding or enforceable against Citibank.  Rather,
Petitioner and SAG have conspired to defraud both Citibank and the Court by issuing the
sham "Arbitration Award" and filing it with this Court.

It is black-letter law that arbitration is a matter of contract and a party
cannot be required to submit to arbitration any dispute which she or he has not agreed to
so submit.  Thus, the authority and ability of an arbitrator to issue an "award" is
dependent upon the existence of an agreement to arbitrate before that arbitrator.  Here,
there is no agreement between Citibank and Petitioner to arbitrate before SAG.  SAG is
not, and has never been, authorized to arbitrate any disputes between Citibank and
Petitioner.  Indeed, Citibank has never consented to arbitration before SAG, and Citibank
so advised SAG long before the purported "Arbitration Award" was entered and the
Petition was filed.  See Affidavit of Elizabeth S. Barnette ("Barnette Aff."), Ex. A.

Indeed, Citibank has received numerous other petitions with baseless,
form allegations nearly identical to the Petition filed by Petitioner in this instant action.

3

Each petition seeks to confirm a sham arbitration "award" allegedly entered by SAG in favor of the cardholder and against Citibank.  See Barnette Aff., ¶ 13; Exs. H, I and J.  Citibank submits that these petitions, as well as the instant Petition, have been distributed to and relied upon by Citibank customers for the purpose of avoiding payment of legitimate debts owed on their credit card accounts, misleading the judicial system and causing Citibank to incur pointless and excessive legal fees.[1]  In fact, Petitioner has filed two other similar frivolous and baseless petitions against Citibank with respect to two other credit card accounts.  Those petitions also are pending in this Court and are entitled *Raymond Mercurio v. Citibank (South Dakota), N.A.*, Case No. 3:05-CV-7076 and *Raymond Mercurio v. Citibank (South Dakota), N.A.*, Case No. 3:05-CV-7085 (both of which are pending before the Honorable David A. Katz), respectively.  Citibank has secured temporary restraining orders and preliminary injunctions against sham arbitration entities operating in the same manner as SAG and issuing similar arbitration "awards" against Citibank both in Florida and in other states.[2]  Moreover, in litigation currently pending before the California Superior Court for the County of Los Angeles, Citibank is seeking similar injunctive relief against SAG and other "mailbox arbitration" forums, as well as monetary damages.[3]

Accordingly, pursuant to the Federal Arbitration Act, 9 U.S.C. §1, et seq. ("FAA"), the Petition must be denied and dismissed in its entirety.  The sham

---

[1]  If they have not already stopped paying the balance owing on their accounts, cardholders often rely upon the "awards" as a basis for failing to make any further payments with respect to their accounts.  In support, cardholders advocate a bizarre (and legally unsupportable) theory that credit card debt is unlawful and uncollectible because somehow the consumer's own money is lent to himself.  This "No Money Lent" theory is patently false, as other courts have recognized. See Barnette Aff.., Exs. K, L and M.

[2]  See Barnette Aff., ¶¶ 6-11; Exs. B-G.

[3]  See *Citibank (South Dakota), N.A. v. Champlain Valley Arbitrations Corporation, et al.*, Civ. No. BC320940 (Los Angeles County Superior Court, Sept. 1, 2004).  In the *Champlain* action, SAG has failed to appear and otherwise defend itself or the legitimacy of its purported arbitration services; accordingly, Citibank has entered SAG's default and has filed a Request for Entry of Default Judgment.  Barnette Aff., ¶ 12.

"Arbitration Award" is not binding and has no effect on Citibank whatsoever because:  (i) there is no agreement between the parties authorizing the arbitration of disputes before SAG; (ii) SAG was not authorized by Citibank to arbitrate any disputes between Petitioner and Citibank; and (iii) Citibank did not appear or participate in any arbitration proceeding before SAG, including with respect to Petitioner.

In the alternative, pursuant to the pursuant to 9 U.S.C. § 10, the sham "Arbitration Award" must be vacated and set aside because: (i) it was procured by corruption and fraud; and (ii) SAG had no authority under any arbitration agreement to issue an award against Citibank.

## II.  FACTUAL BACKGROUND

### A.  The Applicable Arbitration Provision Does Not Authorize SAG To Arbitrate Any Cardholder Dispute Involving Citibank.

Petitioner holds one or more credit card accounts issued and owned by Citibank, which accounts are delinquent (the "Accounts").  Barnette Aff., ¶ 3.[4] Petitioner's Accounts, including their terms and conditions, are governed by a Card Agreement.  As pertinent here, the Card Agreement contains an arbitration provision (the "Arbitration Provision"), which provides:

> **How does a party initiate arbitration:**
> The party filing an arbitration must choose one of the following three arbitration firms:  American Arbitration Association, JAMS, and National Arbitration Forum. . . . You may obtain copies of the current rules of each of the three arbitration firms and forms and instructions for initiating an arbitration, by contacting them as follows:
>
> American Arbitration Association -
> 335 Madison Avenue, Floor 10
> New York, NY 10017-4605
> Web site:  www.adr.org

---

[4]   On or about January 14, 2005, Citibank filed an action to collect the legitimate debt owed by Petitioner on the credit card account.  That action, entitled *Citibank (South Dakota), N.A. v. Raymond Mercurio*, Case No. CVF-05-00681, currently is pending in the Toledo Municipal Court for Lucas County.  See Barnette Aff., ¶ 3.

JAMS
1920 Main Street, Suite 300
Irvine, CA 92610
Web site: www.jamsadr.com

National Arbitration Forum
P.O. Box 50191
Minneapolis, MN 55405
Web site:  www.arbitration-forum.com

See Barnette Aff., ¶ 4.  As reflected above, arbitration can only be conducted before one of three specific, nationally-recognized arbitration firms.  Notably, SAG is not one of the firms authorized to conduct arbitrations involving Citibank and its cardholders.

     **B.**     **Citibank Did Not Agree, And Has Never Agreed, To Arbitrate Before SAG.**

     Although the "Arbitration Award" states that the parties entered into an agreement to arbitrate before SAG, this simply is not true.  Petitioner has not presented an arbitration agreement between the parties allowing for arbitration before SAG because Citibank has never agreed to arbitrate any cardholder dispute, including Petitioner's dispute, before SAG.  Indeed, the only document submitted by Petitioner as evidence of any agreement to arbitrate between the parties is in fact the Citibank Cardmember Agreement governing Petitioner's Accounts that includes the Arbitration Provision which, as discussed, provides that arbitration can only be conducted before either the AAA, JAMS or NAF.  Moreover, the documents submitted by Petitioner in support of the sham "Arbitration Award" do not establish any agreement to arbitrate before SAG.  They are, rather, self-serving documents created by either Petitioner and/or SAG in a spurious attempt to assist Petitioner in avoiding his debt on the Accounts.

     After learning that SAG was issuing "arbitration awards" against it, Citibank formally notified SAG by letter dated February 9, 2004, that Citibank, on behalf of itself and its current and former affiliates, had not agreed and would  not agree, to arbitrate any disputes before SAG.  This letter advises in pertinent part:

     The Bank has received several Notices and/or Demands for Arbitration under the <u>Solomon Arbitration Group ("SAG")</u>. . . .

6

> The Bank has adopted an arbitration program for its cardmembers.  The agreements governing our customers' accounts identify three arbitration firms that cardmembers may select to arbitrate disputes, including each firm's website address.  <u>SAG is not</u> identified <u>as one of those firms</u>. . . .
>
> <u>This letter is formal notice to SAG, and their administrators, committee members, and/or agents that the Bank has not agreed, and will not agree, to arbitrate any disputes before SAG.  Therefore, you are formally advised that any such letters or demands for arbitration received from SAG involving the Bank as a party must be rejected immediately.</u>

<u>See</u> Barnette Aff., ¶ 5 Ex. A (emphasis supplied).  Accordingly, SAG has been, and is, on notice that any demands for arbitration involving Citibank are of no effect and must be rejected.  Thus, because the sham "Arbitration Award" relied upon by Petitioner is of no effect whatsoever, the Petition must be denied and dismissed in its entirety with prejudice.

### III.  <u>ARGUMENT</u>

**A.**   **The Petition Must Be Dismissed In Its Entirety Under Rule 12(B)(6) Because The Purported "Arbitration Award" Allegedly Issued By SAG Is Not Binding On Citibank.**

**1.**   **Applicable Law.**

Because the instant dispute involves transactions involving interstate commerce, substantive federal law under the FAA applies in determining whether the purported "Arbitration Award" is binding on Citibank.  See *Southland Corp. v. Keating*, 465 U.S. 1, 12 (1984) ("Federal law in the terms of the [FAA] governs . . . in either state or federal court"); 9 U.S.C. § 2 (mandating that binding arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract").  The United States Supreme Court has made clear that the FAA is extremely broad and applies to any transaction directly or indirectly affecting interstate commerce.  See, e.g., *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277

(1995); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 (1967).[5]  The

FAA's "primary purpose [is to ensure] that private agreements to arbitrate are enforced

according to their terms."  *Volt Info. Scis., Inc. v. Board of Trs. of Leland Stanford Junior

Univ.*, 489 U.S. 468, 479 (1989) (emphasis supplied).

    Here, there is no agreement to arbitrate before SAG.  The only agreement

submitted by Petitioner in support of the Petition is in fact a copy of the Citibank

Arbitration Provision governing Petitioner's Accounts, which, as discussed does not

provide for arbitration before SAG.  Accordingly, under the FAA, the sham "Arbitration

Award" is neither binding nor enforceable against Citibank.  Therefore, Citibank requests

that this Court deny the Petition in its entirety with prejudice or, in the alternative, issue

an order vacating the sham "Arbitration Award."

   **2.**  **The Petition Must Be Dismissed Because Citibank Did Not
Agree, And Has Never Agreed To Arbitrate Any Cardholder
Dispute Before SAG.**

    Arbitration is a matter of contract.  *AT&T Tech., Inc. v. Communication

Workers of Am.*, 475 U.S. 643, 648 (1986); *United Steelworkers of Am. v. Warrior & Gulf

Navigation Co.*, 363 U.S. 574, 582 (1960) ("[A]rbitration is a matter of contract and a

party cannot be required to submit to arbitration any dispute which he has not agreed so

to submit.").  Thus, "[t]he duty to arbitrate depends solely on the contractual agreement

of the parties to settle their disputes in that manner."  *Francesco's B., Inc., v. Hotel and

Rest. Employees and Bartenders Union, Local 28*, 659 F.2d 1383, 1387 (9th Cir. 1981).[6]

Moreover, the FAA expressly provides that where a method for appointment is set out in

the arbitration agreement, the agreed upon method of appointment "shall be followed."  9

---

[5] Here, there is no question that the FAA applies to this dispute because the credit card
transactions at issue were made between Petitioner , who resides in Ohio, and Citibank, a national
banking association with its only place of business in South Dakota.

[6] See also *Szuts v. Dean Witter Reynolds, Inc.*, 931 F.2d 830, 831 (11th Cir. 1991) ("[t]he power
and authority of arbitrators in an arbitration proceeding is dependent on the provisions under
which the arbitrators were appointed.")

U.S.C. § 5; accord *ATSA of Cal., Inc. v. Continental Ins. Co.*, 702 F.2d 172, 176 (9th Cir. 1983) ("the parties' method of appointing arbitrators must be followed."); A.S. § 09.43.030 (If the arbitration agreement provides a method of appointment of arbitrators, this method shall be followed.) (emphasis added)).

To enforce an arbitration award, the arbitrator must have been "chosen in conformance with the procedures specified in the parties' agreement to arbitrate." *R.J. O'Brien & Assoc., Inc. v. Pipkin*, 64 F.3d 257, 263 (7th Cir. 1995); see also *Bear Stearns & Co., Inc., v. N.H. Karol & Associate, LTD.*, 728 F. Supp. 499, 501 (N.D. Ill. 1989) ("Because the arbitrator has no power beyond the agreement of the parties, an arbitrator who is improperly elected has no power to resolve a dispute between the parties."). Several courts, relying on 9 U.S.C. § 5, have determined that "[a]rbitration awards made by arbitrators not appointed under the method provided in the parties' contract must be vacated." *Cargill Rice, Inc. v. Empresa Nicaraguenses Dealimentos Basicos*, 25 F.3d 223, 226 (4th Cir. 1994) (arbitration award vacated when arbitrators not chosen according to arbitration clause); see also *United States Postal Service v. American Postal Workers Union*, 204 F.3d 523, 531 (4th Cir. 2000) (arbitration award properly vacated when arbitrator exceeded authority); *Szuts*, 931 F.2d at 831 (arbitrators exceeded authority under arbitration agreement); *Avis Rent A Car System, Inc. v. Garage Employees Union, Local 272*, 791 F.2d 22, 25 (2nd Cir. 1986) (arbitrator not chosen according to parties' agreement).

Here, there exists no agreement between the parties authorizing arbitration before SAG and Citibank was not (and has never been) a party to any arbitration before SAG. The only agreement submitted by Petitioner in support of the Petition is in fact a copy of the Citibank Arbitration Provision governing Petitioner's accounts, which, as discussed does not provide for arbitration before SAG. SAG is not listed as one of the permitted firms. Plainly, SAG had no authority to issue the sham "Arbitration Award,"

and contrary to any contention otherwise, Petitioner had no authority or ability unilaterally to require Citibank to "arbitrate" any dispute before SAG.[7] Furthermore, any documents submitted by Petitioner do not alter this conclusion.  Such documents are self-serving statements made by Petitioner in an unlawful attempt to avoid the debt owing on the Account.  These documents do not constitute any agreement between the parties whatsoever, let alone an agreement to arbitrate before SAG.  Petitioner has attempted to mislead this Court and, through these documents, has explicitly provided false information about the parties' relationship.

As noted above, on February 9, 2004, Citibank formally notified SAG, prior to the issuance of the sham "award," that Citibank and its affiliates had not agreed, and would not agree, to arbitrate any disputes before SAG and that any demands for arbitration involving Citibank as a party must be immediately rejected.  Barnette Aff., ¶ 5; Ex. A.  Notwithstanding this notice, SAG knowingly issued an improper and meaningless arbitration "award" without any authority to arbitrate any dispute between Citibank and Petitioner.  Petitioner's blatant attempt to avoid paying credit card debt owing on the Accounts by submitting the sham arbitration "award" for this Court's approval simply cannot stand.  Accordingly, the Petition should be dismissed with prejudice and without leave to amend and this action dismissed in its entirety.

---

[7]   In this regard, the Federal District Court for the Middle District of Florida has rejected the argument that a cardholder can unilaterally select an arbitration provider in contravention of the express terms of the Citibank Cardholder Agreement.  See Barnette Aff., Ex. G at 6-8 ("[D]efendants assertion that a cardholder can agree to the part of the cardholder agreement requiring arbitration but not the part of the agreement listing the acceptable arbitration firms is meritless.").  Furthermore, to the extent Petitioner asserts that the Arbitration Provision is unconscionable, "it does not follow that the cardholder can unilaterally select a new arbitrator." Id., Ex. G at 8.

**3.    In The Alternative, Pursuant To The FAA, This Court Must Vacate The Sham Arbitration Award Issued By SAG.**

In the alternative, the Court should vacate the sham "Arbitration Award" pursuant to Federal law because the "Arbitration Award" was procured by the corruption and fraud of Petitioner and SAG.  Section 10(a) of the FAA provides that an award may be vacated and set aside entirely where, among other reasons: (i) "the award was procured by corruption, fraud or undue means"; or (ii) "the arbitrators exceed their powers."  9 U.S.C. § 10(a)(1), (4).  Citibank contends that an order "vacating" the sham "Arbitration Award" is not necessary here because there simply is no award to be vacated, but the two factors set forth above authorize this Court to vacate the award as a form of alternative relief.

First, the sham "Arbitration Award" was procured by the corruption and fraud of both Petitioner and SAG.  Petitioner cannot produce any agreement between Citibank and Petitioner to arbitrate their disputes before SAG.  Moreover, the agreement submitted by Petitioner as "Exhibit #IV" in support of the Petition is a copy of a Citibank Cardmember Agreement, which provides for arbitration only before AAA, JAMS or NAF -- not SAG.  Presuming Petitioner read prior to its submission in support of the Petition, Petitioner was aware of the terms of the Arbitration Provision governing Petitioner's Accounts.  In addition, SAG knowingly issued the fraudulent "Arbitration Award" notwithstanding that there was not, and never has been, an agreement to arbitrate before SAG -- a fact that SAG knew long before the purported "award" issued.  Compare Barnette Aff., Ex. A (February 9, 2004 letter) with "Exhibit #III" (arbitration "award" dated July 27, 2004) to the Petition.  Also, SAG did not actually conduct, and Citibank did not attend or participate in, any arbitration proceeding; rather, SAG simply issued an arbitration "award" in favor of Petitioner via a phantom, mailbox arbitration proceeding without any hearing, evidence, testimony or witnesses.  Finally, SAG knew that it had no authority to issue the award, yet it still falsely represented that an arbitration was

11

conducted in accordance with an agreement that simply does not exist. Accordingly, the "Arbitration Award" was fraudulently and illegally issued.

Second, SAG clearly "exceeded its powers" because it had no power to arbitrate any dispute between Citibank and Petitioner. See *DiRussa v. Dean Witter Reynolds, Inc., 121 F.3d 818, 824* (2d Cir. 1997) (finding that the inquiry under 9 U.S.C. § 10(a)(4) focuses on whether arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue). Without an agreement to arbitrate, SAG could not derive any authority or power to issue the "Arbitration Award." See *Francesco's B., Inc.*, 659 F.2d at 1387. Despite the total absence of an agreement to arbitrate and without the authorization and involvement of Citibank, SAG still issued the sham arbitration "award." There is no greater instance of an arbitrator exceeding his or her powers then the circumstances presented here. See, e.g., *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp. of Panama, S. A.*, 312 F.2d 299, 300-01 (2nd Cir. 1963) (vacating arbitration award where arbitrator exceeded powers by determining obligations of corporation which was clearly not a party to an arbitration proceeding). Therefore, in the alternative, the Court should vacate the sham "Arbitration Award" pursuant to Federal law.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Citibank requests that the Court deny the Petition and grant its motion to dismiss the Petition in its entirety with prejudice.  In the alternative, Citibank requests that the Court issue an Order vacating the sham "Arbitration Award" pursuant to the FAA, 9 U.S.C. § 10.

/s/ Thomas L. Rosenberg
Thomas L. Rosenberg  (0024898)
Ulmer & Berne LLP
88 East Broad Street, Suite 1600
Columbus, Ohio  43215
(614) 229-0000
Fax (614) 229-0001
trosenberg@ulmer.com
Attorney for Respondent
Citibank (South Dakota), N.A.

OF COUNSEL:

Marcos Sasso
Stroock & Stroock & Lavan LLP
2029 Century Park East, Suite 1800
Los Angeles, CA  90067-5883
(310) 556-5883
Fax (310) 556-5959
msasso@stroock.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2005 the foregoing Motion was filed electronically.  A copy of the Motion was also sent to the following by regular United States mail, postage pre-paid.  Notice of this filing will also be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Mr. Raymond Mercurio
564 Colima Drive
Toledo, Ohio  43609
*Pro Se* Petitioner/Claimant

/s/ Thomas L. Rosenberg
Thomas L. Rosenberg  (0024898)
Ulmer & Berne LLP
88 East Broad Street, Suite 1600
Columbus, Ohio  43215
(614) 229-0000
Fax (614) 229-0001
trosenberg@ulmer.com
Attorney for Respondent
Citibank (South Dakota), N.A.

111/24056.*62*
182716v1

14